## N Y C & ST L RD CO v VANDORP

Ohio Appeals, 6th Dist, Lucas Co
No 2244. Decided Jan. 13, 1930

W. A. Eversman and Charles W. Racine, both of Toledo, for Railroad Co.

Wm. A. Finn and Edgar Norris, both of Toledo, for VanDorp.

WILLIAMS, J.

Plaintiff's car was a 1924 model Ford sedan. There is evidence tending to show that no bell nor whistle was sounded as the train approached the crossing and, as the engine of the automobile continued to run, the inference arises that the sound made by an automobile of that age and make would drown the ordinary noise made by the approach of a train so that the driver would have great difficulty in hearing it.

Interrogatories were submitted to the jury at the request of defendant and the jury found by its answers thereto that the engineer did not blow the whistle and ring the bell as required by the statutes of the state of Ohio, that the headlight of the locomotive was not lighted at the time of the collision and that the plaintiff's own negligence did not directly contribute in the slightest degree to the collision.

Plaintiff in error claims that the case of **Railroad Co. vs. Rohrs, 114 Oh St., 493,** is an authority here. In that case the collision took place in broad daylight. In the instant case, if the headlight was not burning and darkness had come on, the rail-

road crossing was not only a place of danger but became a trap at which the careful and prudent might be caught in a collision. The instant case therefore stands on a different footing. It is more like the case of **Robinson vs. Pennsylvania Railroad Co., 117 Oh St., 43.** In that case the collision happened in the night time and the injured party was not familiar with the crossing. In the instant case the injured party was familiar with the crossing but was misled, according to the evidence adduced by plaintiff, by a failure to sound the bell and whistle and failure to have the headlight lighted. Whether the defendant was guilty of actionable negligence and whether the plaintiff was guilty of contributory negligence were questions for the determination of the jury. One looking for the approach of a locomotive in the night time naturally expects to see a headlight, and, if he looks both ways when looking will be effective and sees none, may well infer that no train is approaching. The trial judge did not err in refusing to direct a verdict.

There is much conflict in the evidence upon the various issues and it does not appear from the record that the verdict is clearly and manifestly against the weight of the evidence.

Plaintiff in error claims the court erred in charging that the jury might consider whether defendant was guilty of negligence in the speed at which it operated its train. The defendant company also requested certain written instructions before argument which raised the same question. Counsel cites **Railroad Co. vs. Kistler, 66 Oh St., 326.** In that case it was held that in the absence of statute, negligence could not be predicated upon the speed at which trains were operated in the country. The collision in the instant case, however, occurred within the corporate limits of the village of Maumee at a point where there were many dwelling houses and, although there was not offered in evidence any ordinance regulating speed within the corporation, yet there was a duty on the part of the railroad company not to operate its train through the village at a greater speed than ordinary care warranted. There was no error in this portion of the charge.

Plaintiff in error claims that the court erred in charging the law as to failure to have the headlight lighted. The part complained of is as follows:

"Then in **8945-1 GC** we have this provision: 'Every railroad corporation operating a railroad or a part of one in this State shall equip each of its locomotives with a headlight of such construction and with sufficient candle power to render plainly visible at a distance of not less than 350 feet in advance of such engine, etc.' Now the purpose of having the headlight on the engine is to use it when the circumstances demand its use. Briefly, one of the purposes of these signals, is to act as a warning to persons in using the highways at grade crossings. If the railroad observed those requirements no complaint can be offered. If it did not observe them, but violated one or more of the provisions of the statute referred to, that violation in and of itself constituted negligence on the part of the defendant, and if such negligence were the proximate cause of plaintiff's injury and loss the defendant would be liable therefor provided the plaintiff himself were not negligent in a manner which contributed to his own injury."

Section **8945-1 GC** referred to in the part of the charge quoted is of no binding force in view of the Federal Law. The original Boiler Inspection Act enacted by Congress had application to the boiler only, but that act as amended is a general one and extends to the design, construction and material of every part of the locomotive and tender and of all appurtenances. This act confers upon the Interstate Commerce Commission the power to specify the sort of equipment to be used and the fact that the Commission has not seen fit to exercise its authority to the full extent conferred has no bearing upon the construction of the act delegating the power and state legislation with reference to the headlight, which is an appurtenance of the locomotive, is precluded for the reason that the Boiler Inspection Act, as amended, was intended to occupy the whole field.

Napier vs. Atlantic Coastline R. R. Co., 272 U. S., 605.

Since the passage of the amended act in question the Interstate Commerce Commission, by orders made in pursuance of the amended act, the last of which is April 17, 1919, has covered the matter of headlights by Order No. 129(a), which reads as follows:

"129. Locomotive used in road services, —(a) Each locomotive used in road service between sunset and sunrise shall have a headlight which shall afford sufficient illumination to enable a person in the cab of such locomotive who possesses the usual visual capacity required of locomotive enginemen, to see in a clear atmosphere, a dark object as large as a man of average size standing erect at a distance of at least 800 feet ahead and in front of such headlight: and such headlight must be maintained in good condition."

Robert's Federal Liabilities of Carriers, 2nd Ed., Vol. 2, page 63.

This court will take judicial notice of the orders of the Interstate Commerce Commission. Robert's Federal Liabilities of Carriers, 2nd Ed., Vol. 2, page 1964, Sec. 1020.

While the federal law controls as to headlights, and not the state law, it will be observed that the order of the Commission relating thereto is more drastic than the provisions of **8945-1 GC.**

We are not required to determine whether the court committed error in giving the part of the charge above quoted as to headlights, for, if error was committed, it was not prejudicial.

As before stated in this opinion, the jury found that the headlight of the locomotive was not lit at the time of the collision. If it was not lighted it is apparent that it could not have shone ahead at all and therefore the jury never got to the inquiry as to the distance it shone ahead of the

locomotive or what objects it disclosed.

We have examined all the questions raised by the plaintiff in error and find no prejudicial errors apparent upon the face of the record. For the reason given the judgment will be affirmed.

Lloyd and Richards, JJ., concur.