On May 8, 1996, Loveda L. Davis and her husband, Glenn M. Davis, filed a complaint in the Franklin County Court of Common Pleas against the city of Columbus and Mark E. Kouns. Ms. Davis asserted claims for relief of: tort of sexual harassment; violation of R.C. 4112.02 and 4112.99; violation of Title VII; negligent and intentional infliction of emotional distress; invasion of privacy; negligence on the part of the city for failure to properly conduct an investigation of Ms. Davis's complaint under the city's sexual harassment policy; failure to provide a safe work place; respondeat superior; and retaliatory acts. Mr. Davis asserted a claim for relief of loss of services and consortium.
Ms. Davis had been employed as a word processing specialist with the city. Mr. Kouns was her immediate supervisor. Ms. Davis averred, in part, that Mr. Kouns had committed acts of sexual harassment against her, including daily touching, leering, comments with sexual overtones, off-color jokes, comments about her appearance and questions about her home life.
On October 3, 1997, the city and Mr. Kouns filed a motion for summary judgment as to all claims against them. On January 13, 1998, the trial court rendered a decision, granting summary judgment in favor of the city and Mr. Kouns on the claims of violation of Title VII, negligent and intentional infliction of emotional distress; invasion of privacy and negligent investigation into Ms. Davis's sexual harassment complaint. The trial court found, essentially, that genuine issues of fact existed as to the remaining claims and, therefore, summary judgment in favor of the city and Mr. Kouns on such claims was denied.
A jury trial was held on the remaining issues. Interrogatories were submitted to the jury. At issue in this appeal is Interrogatory No. 1 which purportedly consisted of the elements of a claim for hostile work environment. Such interrogatory originally stated:
 With respect to Plaintiff's claim that Defendant Mark Kouns sexually harassed her by intentionally subjecting her to a sexually hostile work environment, has Plaintiff proven, by a preponderance of the evidence:
 (1) that Plaintiff was subjected to pervasive, unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature?
 (2) that the harassment complained of was based upon one's sex?
 (3) that the charged sexual harassment had the effect of unreasonably interfering with Plaintiff's work performance and creating an intimidating, hostile, and offensive working environment?
The jury was to answer "yes" or "no" to each subpart.
The jury asked several questions during their deliberations, one of which stated:
 [I]f we find no to Interrogatory 1, Section 1, but yes to Interrogatory 1, Section 3, can we award damages in Interrogatory 9 and 11? We need this clarification to continue the damages part of our deliberation.[1] (Tr. 15, Vol. 8.)
The trial court answered "Yes." Id.
The jury then asked another question:
 If we find no on Interrogatory 1, Section 1, and yes on Interrogatory 1, Section 3, and sign verdict for plaintiff, are we stating that defendant was guilty of sexual harassment? Or does a verdict for plaintiff simply mean that we found some point in favor of plaintiff, and this is our vehicle to award damages? (Tr. 15, Vol. 8.)
The trial court responded "No" to the first part of the question. Id. at 16. As to the second part of the question, the trial court responded:
 * * * [Y]ou may find for plaintiff on any of her four claims, (two against Kouns and two against the city), only if you find that she has proved all of the elements pertaining to that particular claim. If you have found for plaintiff on one or more of her claims, you may award damages only on those claims. If you find for plaintiff against one or both defendants on one or both of her respective claims against them, you should sign the general verdict form for plaintiff against that defendant. Id.
The jury returned its general verdicts and answers to the interrogatories. The jury returned a general verdict in favor of Mr. Kouns and the city on Mr. Davis's loss of consortium claim, and a general verdict in favor of Ms. Davis on her claim against the city for retaliation and for respondeat superior liability on the sexual harassment claim, awarding $44,554 in compensatory damages. The jury also returned a general verdict in favor of Ms. Davis on her sexual harassment claim against Mr. Kouns, awarding $14,750 in compensatory damages and $1,000 in punitive damages plus attorney fees.
The trial court, however, found an inconsistency between the answers to Interrogatory No. 1 and the general verdict for Ms. Davis against Mr. Kouns. Id. at 17. The trial court also indicated that there were inconsistencies between the answers to the subparts of Interrogatory No. 1. Id. at 29. Specifically, the jury had answered "NO" to subpart (1) which asked, in essence, whether or not Ms. Davis was subjected to pervasive, unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. However, the jury answered "YES" to subparts (2) and (3) which asked whether the harassment complained of was based upon one's sex and whether the charged sexual harassment had the effect of unreasonably interfering with her work performance and creating an intimidating, hostile and offensive working environment. The trial court then deleted the words "by intentionally subjecting her to a sexually hostile work environment" from the introduction in Interrogatory No. 1 and resubmitted it to the jury, instructing the jury to reconsider it. Id. at 32.
 After a short deliberation, the jury submitted a question:
 In order to answer yes on Section 3, do we have to answer yes on Section 1 of Interrogatory 1? Id. at 32-33.
The court answered "no." Id. at 33.
The jury continued deliberating and then returned the interrogatory with the same answers it had given originally. After the jury was dismissed, the city and Mr. Kouns orally moved for judgment notwithstanding the verdict on the sexual harassment claims against Mr. Kouns and the sexual harassment claim against the city based upon respondeat superior. The trial court orally granted the motion. On May 18, 1998, the trial court journalized an entry granting judgment in favor of Ms. Davis against the city on the retaliation claim only. The trial court granted the city and Mr. Kouns's motion for judgment notwithstanding the verdicts and dismissed the sexual harassment claims against both defendants.
On May 20, 1998, Ms. Davis filed a motion for a new trial. On July 9, 1998, the trial court rendered its decision finding Ms. Davis failed to show the judgment was contrary to law. A judgment entry was journalized on July 24, 1998. The Davises have appealed to this court, assigning the following errors for our consideration:
ASSIGNMENT OF ERROR NO. 1:
 DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT ENTERED JUDGMENT N.O.V.?
 ASSIGNMENT OF ERROR NO. 2:
 DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN THE JURY INSTRUCTIONS GIVEN?
We note that the Davises have appealed only as to Ms. Davis's sexual harassment claim against Mr. Kouns (hereinafter "appellee"). Accordingly, we hereinafter refer to Ms. Davis as "appellant." Appellee and the city had filed a cross-appeal; however, such cross appeal has been voluntarily dismissed by both appellee and the city.
We address appellant's second assignment of error first. Appellant contends, in essence, that the trial court gave erroneous jury instructions on hostile work environment. A trial court must give jury instructions that are correct and complete statements of the law. Sharp v. Norfolk W. Ry. Co.
(1995), 72 Ohio St.3d 307, 312. In examining errors in jury instructions, a reviewing court must consider the charge as a whole and determine whether such charge probably misled the jury in a manner materially affecting the complaining party's substantial rights. Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89,93.
Here, appellant asserted a claim against appellee pursuant to R.C. 4112.02 which states, in pertinent part:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the * * * sex * * * of any person, to * * * discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
Federal case law interpreting and applying Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code, Section 2000e et seq. ("Title VII") is generally applicable to cases involving R.C. Chapter 4112. See Genaro v. Cent. Transport,Inc. (1999), 84 Ohio St.3d 293, 295.
In Harris v. Forklift Systems, Inc. (1993), 510 U.S. 17, the Supreme Court of the United States considered the definition of "hostile work environment" under Title VII. Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Id. at 21, citingMeritor Savings Bank, FSB v. Vinson (1986), 477 U.S. 57, 65,67. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview. Harris at 21. In addition, the victim must subjectively perceive the environment to be abusive for the conduct to have actually altered the conditions of the victim's employment. Id. at 21-22; see, also,Faragher v. City of Boca Raton (1998), 524 U.S. 775, __________118 S.Ct. 2275, 2283.
In order to determine whether an environment is hostile or abusive, courts must look at all the circumstances.Harris at 23; Faragher, 118 S.Ct. at 2283. No single factor is required; however, such circumstances may include the frequency and/or the severity of the conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, whether the conduct unreasonably interferes with the employee's work performance, and whether the employee's psychological well-being is affected. Harris at 23.
Title VII does not prohibit all verbal or physical harassment in the work place; it is directed only at discrimination because of sex. Oncale v. Sundowner Offshores Serv. (1998),523 U.S. 75, __________ 118 S.Ct. 998, 1002. As such, the critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. Id.
 Here, the trial court gave the following instructions:
 In order to be successful on her claim of hostile work environment, plaintiff must prove the following essential elements by a preponderance of the evidence for a claim of hostile environment sexual harassment:
That she is a member of a protected class;
 That she was subjected to pervasive, unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature;
 The harassment complained of was based upon one's sex; and
 The alleged sexual harassment had the effect of unreasonably interfering with her work performance and creating an intimidating, hostile and offensive working environment.
 It is agreed upon by the parties that plaintiff is a member of a protected class because she is female.
 If plaintiff participated in or encouraged conduct of a sexual nature, the alleged sexual harassment is not "unwelcome."
 The alleged harassment was based upon sex if the defendant treated the plaintiff differently than similarly-situated males.
 A hostile work environment exists where conduct is sufficiently severe or pervasive as to alter the terms or conditions of employment and create an abusive working environment. Not all words or acts constitute unlawful harassment. Speaking phrases that may cause someone to be offended does not in and of itself create a hostile work environment. Rather, plaintiff must prove that the alleged harassment interfered with her work performance. Sexual innuendo or vulgar language that is trivial or only annoying is not enough to establish sexual harassment.
 In determining whether a hostile work environment existed, you should also consider all the circumstances under which the conduct took place, including the nature of the unwelcome acts; how often there were offensive encounters; the total number of days over which the offensive conduct occurred; the situations or context in which the sexually-harassing conduct occurred; the severity of the conduct; whether the conduct was physically threatening or humiliating or only an offensive utterance; whether plaintiff actually was seriously adversely affected by the conduct; and whether a reasonable person, male or female, would have been seriously affected by such conduct. In short, you must review all of the circumstances of plaintiff's work environment in determining the existence of a sexually hostile work environment. (Record at 174.)
The above instructions are not without error. However, as a whole, the jury instructions were sufficient. For example, the instructions stated an essential element was that the plaintiff was subjected to sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature. The case law does not require that the conduct be sexual in nature. Rather, the critical issue is whether one is discriminated against because she is female or because he is male. Despite this portion of the instruction that erroneously narrowed the type of conduct that is actionable, the instructions as a whole were sufficient because they go on to later state that the jury must review all the circumstances.
The instructions also erroneously stated that the plaintiff had to prove she was a member of a protected class. There simply is no such requirement. There is no "protected class" in sexual harassment cases. Indeed, both males and females can be sexually harassed. Appellant was not adversely affected by this instruction, however, because the instruction went on to state that the parties agreed she was a member of a protected class.
In addition, the instructions stated that the plaintiff had to show she was subjected to pervasive sexual harassment. However, the case law states that conduct must be pervasiveor severe. Such error was minimal given that the jury was later instructed to consider all the circumstances including the severity of the conduct and was instructed that a hostile work environment exists where conduct is sufficiently severe or pervasive as to alter the conditions of employment.
We conclude that, as a whole, the jury instructions were sufficient. Accordingly, appellant's second assignment of error is overruled.
In her first assignment of error, appellant contends the trial court erred in granting appellee's motion for judgment notwithstanding the verdict ("JNOV"). The trial court granted appellee's (and the city's) motion for JNOV because the jury concluded appellant failed to prove one element of her sexual harassment claim. As stated above, the jury returned answers to Interrogatory No. 1 that indicated appellant had not shown she was subjected to pervasive, unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature. However, the jury did find that appellant showed the harassment complained of was based upon one's sex and that the charge of sexual harassment had the effect of unreasonably interfering with her work performance and creating an intimidating, hostile and offensive work environment.
Appellant contends, in part, that JNOV should not have been granted because the answers to Interrogatory No. 1 were inconsistent with each other and, therefore, such conflicting answers should be disregarded, and the general verdict for appellant should be upheld. Appellant also contends that subpart (1) of the interrogatory was improper because it contained more than one element and was legally incorrect.
In Tasin v. SIFCO Industries, Inc. (1990), 50 Ohio St.3d 102,105, the Supreme Court of Ohio stated that where the answers to interrogatories are inconsistent with the verdict, judgment should not be rendered on the answers to interrogatories as against the general verdict unless such answers are inconsistent and irreconcilable with the general verdict. In the case at bar, we have what appears to be a conflict between the subparts of Interrogatory No. 1 and a conflict between subpart (1) of the interrogatory and the general verdict. Appellee contends that the subparts of Interrogatory No. 1 reflected the elements of sexual harassment and because the jury found appellant failed to prove one element, the general verdict cannot stand.
Appellant contends that the answers to the subparts of Interrogatory No. 1 are internally inconsistent and, therefore, such answers are to be disregarded. in Klever v. Reid BrothersExpress, Inc. (1949), 151 Ohio St. 467, paragraph three of the syllabus, the Supreme Court held that where the answers to interrogatories are inconsistent or in direct conflict with each other, and it is impossible to harmonize such answers, they cancel each other and should be disregarded by the court. See, also, Thornton v. Parker (1995), 100 Ohio App.3d 743, 757;Caserta v. Allstate Ins. Co. (July 23, 1985), Franklin App. No. 84AP-1036, unreported (1985 Opinions 2119, 2122-2123). For the reasons that follow, we find that the trial court erred in granting appellee's motion for JNOV.
The answers to Interrogatory No. 1 are internally inconsistent. The jury found, as reflected by its answer to subpart (1), that appellant failed to show she was subjected to pervasive, unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other physical or verbal conduct of a sexual nature. However, the jury then found in subparts (2) and (3) that "the harassment complained of was based upon one's sex" and "the charge of sexual harassment had the effect of unreasonably interfering with plaintiff's work performance and creating an intimidating, hostile and offensive work environment." Obviously, the jury found appellant proved that certain conduct on the part of appellee, conduct directed at appellant because she was female, unreasonbaly interfered with her work performance and created a hostile work environment. However, given the jury's answer to subpart (1), it is unclear what conduct formed the basis of its other findings.
One factor that may have led to the inconsistent answers is that the interrogatories did not reflect all of the jury instructions which, as a whole and as discussed above, sufficiently set forth the law on sexual harassment. In addition, the trial court told the jury it could answer no to subpart (1), yes to subpart (3) and award damages to appellant. In addition, the jury was aware that it could only find in favor of appellant if she proved all the elements.
We can speculate that the conduct found to be violative was "other circumstances" as set forth in the jury instructions. We can also speculate that the jury found "all circumstances" to include non-sexual conduct. It is possible, given the wording of subpart (1), that the jury found any conduct on the part of appellee that was sexual in nature was not pervasive. Perhaps the jury found appellee's conduct as a whole constituted sexual harassment and that is why it answered no to subpart (1), yes to subparts (2) and (3) and returned a general verdict for appellant.
However, neither our nor the trial court's job is to speculate why the jury found as it did. Rather, it is the duty of the court to harmonize, if possible, a special finding of a jury with its general verdict. Klever at paragraph one of the syllabus. Given this principle, we conclude that the trial court erred in granting JNOV. Whether subpart (1) is disregarded or not, the answers to subpart (2) and (3) in and of themselves show the jury found appellant proved her claim of hostile work environment. Therefore, the answers can be harmonized with the general verdict in favor of appellant. Of course, if one disregarded the answers to the interrogatories because they are internally inconsistent, then all that remains is the general verdict for appellant. Hence, the general verdict for appellant is upheld either way.
Given all of the events occurring below, including the jury instructions as a whole, the questions asked to the trial court by the jury regarding the interrogatory and the trial court's answers thereto, the wording of the interrogatory, the answers to the subparts of such interrogatory and the general verdict in favor of appellant, we conclude that the general verdict in favor of appellant should have been upheld. Therefore, the trial court erred in granting JNOV in favor of appellee. Accordingly, appellant's first assignment of error is sustained.
In summary, appellant's first assignment of error is sustained, and her second assignment of error is overruled. The judgment of the Franklin County Court Common Pleas is reversed. This cause is remanded to such court with instructions to enter judgment in favor of appellant against appellee on the sexual harassment claim in accordance with the general verdict(s) and to conduct any further appropriate proceedings.
Judgment reversed and cause remanded with instructions.
BOWMAN and BROWN, JJ., concur.
[1] Interrogatories 9 and 11 asked the jury to state the dollar amount of damages Ms. Davis proved.